UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SHOMARI E. NORMAN,

        Plaintiff,

-v-                                              No. 20-CV-5560-LTS

THE CITY OF NEW YORK et al.,

        Defendants.

-------------------------------------------------------x

MEMORANDUM ORDER

        Pro se plaintiff Shomari E. Norman ("Plaintiff") brings this action against Defendants the City of New York (the "City"), New York Police Department Commissioner Dermot Shea ("Commissioner Shea"), and Leith Chrysler Jeep,[1] pursuant to 42 U.S.C. section 1983 ("Section 1983") and state tort law, alleging that his vehicle was wrongfully seized in March 2018 and that his credit was damaged by the repossession.  Two of the remaining defendants—the City and Commissioner Shea ("the City Defendants")—have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 (docket entry no. 70), and in response Plaintiff has filed several pleadings denominated as motions,[2] opposing Defendants' summary judgment motion and seeking various forms of relief.

---

[1]    The case was dismissed as against Defendants Letitia James, Letizia Tagliafierro, and Josh Stein, on the basis of sovereign immunity, in December 2020.  (Docket entry no. 42.)

[2]    These pleadings include a Motion to Strike Motion to Dismiss and Addendum (docket entry nos. 76 and 77); a Cross-Motion for Summary Judgment (docket entry no. 78); a Motion to Strike (docket entry no. 80); a Motion for Pretrial Hearing (docket entry no. 81); a Motion for Direct Verdict and Addendum (docket entry nos. 83 and 84); and a Motion to Schedule Pretrial/Trial and Addendum (docket entry nos. 87 and 88).

The Court has jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367. The Court has considered the parties' submissions carefully and, for the following reasons, the City Defendants' motion for summary judgment is granted in its entirety. Further, because Plaintiff has not complied with a prior court order and has not taken steps in this action to pursue his claims against defendant Leith Chrysler Jeep, his remaining claims against Leith Chrysler Jeep are dismissed without prejudice for failure to prosecute.

BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[3] On March 5, 2018, at approximately 9:27 a.m., Plaintiff called 911 from a location in the Bronx to report that his black jeep[4] was being towed without his permission. (Docket entry no. 73 ("Def. 56.1 St.") ¶ 1.) At approximately 9:35 a.m., a tow truck driver placed a separate 911 call to report that, as he was attempting to tow a black jeep, the driver was refusing to exit the vehicle. (Id. ¶ 2.) Soon thereafter, several New York Police Department ("NYPD") officers arrived on the scene. The officers began speaking with the tow truck driver, who "showed [the officers] something on his clipboard" apparently authorizing the tow, and the officers then ordered Plaintiff "to release his

---

[3] Facts characterized as undisputed are identified as such in Defendant's statement pursuant to SDNY Local Civil Rule 56.1 (docket entry no. 73) or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Plaintiff did not file a Rule 56.1 statement. In light of Plaintiff's pro se status, the Court overlooks his failure to file a Rule 56.1 statement and "conducts its own independent review of the record." Hayes v. County of Sullivan, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012). See also Teamsters Loc. 210, Affiliated Health & Ins. Fund-Vacation Fringe Benefit Fund, 27 F. Supp. 3d 346, 349 (E.D.N.Y. 2014) ("Although [the] plaintiffs did not file a Rule 56.1 statement, the [c]ourt has independently reviewed the record to ensure that there is uncontroverted evidence to support the paragraphs referenced in [the] defendants' Rule 56.1 [statement].").

[4] The vehicle was a black Jeep Patriot with North Carolina tags, license plate number EAB1676, and VIN number 1C4NJPBB7FD328723. (Def. 56.1 St. ¶ 1-2; Pl. Depo. Tr. at 44.)

vehicle to the towing company." (Id. ¶ 3; Plaintiff Deposition Transcript ("Pl. Depo. Tr.") docket entry no. 71-2, at 58-60.) Plaintiff complied, and the jeep was towed away. The jeep was subsequently transported to North Carolina and received by the Leith Chrysler Jeep Dealership ("the Dealership") in Raleigh, North Carolina. (Def. 56.1 St. ¶ 4; Pl. Depo. Tr. at 43-44, 69-70.)

It is not entirely clear from the record whether the towing of the Jeep was initiated by the City, by the Dealership, or by some other third party. Plaintiff testified that, at the time of the towing, title to the jeep was held by the Dealership pursuant to a contract under which Plaintiff was buying the vehicle under an installment payment plan. (Pl. Depo. Tr. at 44-49.) According to Plaintiff, he "was only 1 payment behind" on his monthly payments to the Dealership at the time of the incident, and the Dealership "never notified [him]" of any default or repossession. (Docket entry no. 2 ("Compl.") ¶ 3.) After the jeep was transported to North Carolina and received by the Dealership, the Dealership "sold it to someone else." (Compl ¶¶ 3-4; Pl. Depo. Tr. at 69.)

Plaintiff also testified that, when he approached the jeep on the morning of the towing incident, he noticed that there was a boot on the tire and a "yellow paper posted on [his] car," which he understood to indicate that he had "24 hours to pay" his parking tickets or his car would be towed. (Pl. Depo. Tr. at 39-41.) Plaintiff stated that he then called the New York City Parking Ticket Division, and was informed that he owed $986 in outstanding parking tickets. (Id. at 40.) Shortly after this phone call, the tow truck arrived, and the driver of the tow truck informed Plaintiff "that NYPD gave him orders to tow [the] vehicle." (Id. at 41-42.)

The NYPD did not create a police report documenting this towing incident, and there are no records pertaining to Plaintiff's vehicle in any NYPD database. (Def. 56.1 St. ¶ 5-6.) Plaintiff made various attempts to locate the vehicle (such as by contacting the NYPD, the towing company, and the Dealership, and by filing a claim with his insurance company), but was

ultimately unsuccessful in recovering the vehicle or in receiving compensation for the allegedly unlawful towing. (Pl. Depo. Tr. at 56-70, 86-87.) Plaintiff filed a Notice of Claim with the City regarding this incident on June 9, 2020 (approximately two years after the incident occurred). (Docket entry no. 71-3.)

Plaintiff commenced this action in July 2020, alleging a number of constitutional, statutory, and common law violations in connection with the towing of his vehicle; as well as alleging that the NYPD failed to appear at a hearing noticed in another proceeding; and that the Dealership failed to provide him any notice of default and made false reports to credit bureaus following the tow. Specifically, Plaintiff brings claims citing: (1) 18 U.S.C. § 3146 ("failure to appear in Court"); (2) 41 U.S.C. § 4712(g)(1) ("Abuse of Power"); (3) 25 C.F.R § 11.448(2)(b) ("Abuse of Office"); (4) 5 U.S. Code § 2302 ("Prohibited Personnel Practice"); (5) 18 U.S.C. § 241 ("Conspiracy against Rights"); (6) 18 U.S. Code § 1961 ("Unlawful Debt"); (7) 18 U.S. Code § 2384 ("Seditious Conspiracy"); (8) Slander of Credit; (9) Libel; (10) Conspiracy to Obstruct Justice; (11) Intentional Infliction of Emotional Distress ("IIED"); and (12) the due process clause of the Fourteenth Amendment to the Constitution of the United States. (Compl. ¶¶ 4–13; docket entry no. 3; docket entry no. 27.)[5] Plaintiff seeks "relief of $50 million dollars for

---

5    On July 17, 2020, Plaintiff filed his Complaint, which described the facts of the case, listed his claims against the defendants, and appended several documentary exhibits. (Docket entry no. 2.) That same day, Plaintiff filed a Motion to Show Cause, which appeared to supplement the Complaint with additional causes of action against the defendants. (Docket entry no. 3.) On August 31, 2020, Plaintiff filed an Amended Complaint, which omitted most of the causes of action listed in the initial Complaint, and instead appeared to be fashioned as a discovery request seeking surveillance footage from the City. (Docket entry no. 27.) Because of Plaintiff's pro se status, the Court considers and addresses the causes of action raised in each of these three filings. See Guy v. MTA New York City Transit, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017) (noting that although "an amended complaint ordinarily replaces the original complaint," due to the plaintiff's "pro se status" the court would "consider both the Third Amended Complaint and the First Amended Complaint together") (citations omitted).

slander of credit, life endangerment, stolen property, and . . . fraud by [abuse of] office," and requests that the Court "have the FBI [] investigate this case." (Compl. ¶ 14.)

DISCUSSION

The motion of the City Defendants is brought pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Under Rule 56(a), summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of demonstrating the absence of a material issue of fact, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), and the Court must be able to find that, "after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Marvel Entm't, Inc. v. Kellytoy (USA), Inc., 769 F. Supp. 2d 520, 523 (S.D.N.Y. 2011) (quoting Heublein v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993)).  "It is well established that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quotation omitted).  "Nevertheless, the application of this different [pro se] standard does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." Pierre v. City of New York, 531 F. Supp. 3d 620, 624-25 (E.D.N.Y. 2021) (quoting Jorgenson v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003)).

Constitutional Deprivation of Property Claims

Plaintiff claims that the City Defendants unlawfully deprived him of his property, in violation of his Fourteenth Amendment due process rights.  The City Defendants assert that (1) Plaintiff's claim fails as against both Defendants because he possessed an adequate post-

deprivation remedy under state law, and (2) Plaintiff's claim against Commissioner Shea fails because the Commissioner was not personally involved in the incident.

Post-Deprivation Remedy

The Court construes Plaintiff's constitutional deprivation of property claims as claims under 42 U.S.C. section 1983 ("Section 1983"). Section 1983 provides "a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). In order to prove a Section 1983 claim, a plaintiff must establish that he has been deprived of his civil rights by "a state actor." Fisk v. Letterman, 401 F. Supp. 2d 362, 367-68 (S.D.N.Y. 2005). Plaintiff has adequately shown the involvement of a state actor by alleging that NYPD officers played a role in the towing of his vehicle.

To maintain a Section 1983 claim based on an alleged unconstitutional deprivation of property under the Fourteenth Amendment, a plaintiff must show that (1) he possessed a property interest; and (2) he was deprived of that interest without adequate due process. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313 (2d Cir. 2002). There is no dispute here that Plaintiff was deprived of a property interest in his vehicle; the question thus turns to what process was due to Plaintiff. "The type of process due depends in part on whether the alleged violation was caused by 'established state procedures' or by 'random, unauthorized acts by state employees.'" Ford Motor Credit Co. v. N.Y. City Police Dep't, 394 F. Supp. 2d 600, 610 (S.D.N.Y. 2005) (citation omitted). If the deprivation is the result of "random, unauthorized" acts by state employees, the Due Process clause is not violated when the state provides the plaintiff with a meaningful post-deprivation remedy in the state courts. Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev., 959 F.2d 395, 404 (2d Cir. 1992).

Where there is no allegation that the deprivation occurred pursuant to any established governmental policy, and it appears instead that the action was undertaken on an individual basis by low-level state employees, the deprivation is considered "random and unauthorized" and the plaintiff must seek relief in state court (as opposed to federal court). For example, in Alloul v. City of New York, No. 09-CIV-7726-JSR-FM, 2010 WL 5297215 (S.D.N.Y. Dec. 21, 2010), the City had towed (and subsequently destroyed) the plaintiff's vehicle after the NYPD concluded that the car had been abandoned on a city street. Id. at * 1-2. The plaintiff brought suit in federal court, alleging that the towing had violated his Fourteenth Amendment due process rights. Id. at *4-5. The court held that the due process claim failed because the plaintiff had not shown that the City's towing of his car was conducted pursuant to any "established state procedures," and he had produced "no evidence that either the towing or destruction of [his] car was anything other than a 'random and unauthorized' act that resulted from the conduct of lower-level City employees." Id. at *6 (citation omitted). Similarly, in Barnes v. City of New York, No. 13-CV-7283-GBD-JLC, 2015 WL 4076007, at *15 (S.D.N.Y. July 2, 2015), report and recommendation adopted, No. 13-CIV-7283-GBD-JLC, 2015 WL 5052508 (S.D.N.Y. Aug. 26, 2015), the court concluded that the plaintiff could not establish a viable due process claim where his car was towed by the NYPD for failure to display a license plate on a city street, but the plaintiff had not "alleged that the deprivation of his property was the result of any 'established state procedures,' as opposed to a 'random and unauthorized' act by lower-ranking officials."

Here, Plaintiff has not claimed or demonstrated that the acts of ordering Plaintiff to release his vehicle to the tow company (and failing to document such incident) were conducted according to any type of established state procedure or overarching governmental policy and thus, drawing all reasonable inferences in Plaintiff's favor, these were random,

unauthorized acts of NYPD personnel.  Where a claim is based on random, unauthorized acts by public employees, "the 'due process' required by the Fourteenth Amendment is satisfied by the availability at the state level of an adequate post-deprivation hearing."  Kraebel, 959 F.2d at 404.  Courts in the Second Circuit have routinely held that a plaintiff has an adequate post-deprivation state remedy when he can bring a common law tort claim (such as replevin, conversion, or negligence) in New York courts for the return of his property.  See, e.g., Colson v. New York Police Dep't, No. 13-CV-5394-JG, 2015 WL 64688, at *9 (E.D.N.Y. Jan. 5, 2015) (collecting cases and observing that "[s]tate tort causes of action, including negligence and conversion claims, have been found to provide an adequate post-deprivation remedy"); Johnson v. City of New York, No. 16-CV-2879-PKC-LB, 2018 WL 1175139, at *3 (E.D.N.Y. Mar. 5, 2018) ("New York has adequate state post-deprivation remedies that allow a plaintiff to bring a state law claim for negligence, replevin, or conversion with the Court of Claims.") (citation and quotations omitted); Alloul, 2010 WL 5297215, at *6 ("In such circumstances"—i.e., when a plaintiff alleges that the City has unlawfully seized his vehicle—"judges in this district have consistently found that the availability of state tort law causes of action constitutes an adequate post-deprivation remedy").

Here, after Plaintiff's vehicle was towed, he could have brought a state court action against Defendants in the New York Court of Claims on theories such as negligence or conversion—but he did not.  (Def 56.1 St. ¶7.)  Because Plaintiff possessed a constitutionally adequate post-deprivation remedy in the state courts, but failed to take advantage of such remedy, he cannot establish a cognizable due process violation in this Court.  The City Defendants are therefore entitled as a matter of law to summary judgment dismissing Plaintiff's Fourteenth Amendment Section 1983 claim.

Lack of Personal Involvement

As an alternative basis for dismissing Plaintiff's constitutional claim against Commissioner Shea, the City Defendants argue that Plaintiff's Section 1983 cannot be maintained as against the Commissioner because there is no evidence that the Commissioner was personally involved in the towing incident. "Personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983." Dowtin v. O'Neil, 416 F. Supp. 3d 159, 162 (E.D.N.Y. 2017) (citation and quotation omitted). Plaintiff's assertions based on Commissioner Shea's general oversight responsibility for all NYPD activities are insufficient to support his claim. Section 1983 liability "cannot be generally imposed on a supervisor solely based on his position, because there is no respondeat superior or vicarious liability under § 1983." Id. In other words, to recover against a state official, a plaintiff must demonstrate that the official, "through the official's own individual actions, has violated the Constitution." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)); see also Tangreti v. Bachmann, 983 F.3d 609, 618 (2d Cir. 2020) (noting that a section 1983 violation "must be established against the supervisory official directly"). A plaintiff "must allege a tangible connection between the acts of a defendant and the injuries suffered." Williams v. Annucci, No. 920-CV-1417-BKS-TWD, 2021 WL 4775970, at *4 (N.D.N.Y. Oct. 13, 2021) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)).

Here, Plaintiff has made no showing that Commissioner Shea was personally involved in the towing incident. Plaintiff admitted during his deposition that Commissioner Shea was not one of the officers who arrived on the scene that day, and records produced by the City confirm this. (Pl. Depo. Tr. at 58-59; docket entry no. 71-5.) Nor has Plaintiff made any showing that Commissioner Shea had any knowledge of the towing of Plaintiff's vehicle, whether in a supervisory capacity or otherwise. Rather, it appears that Commissioner Shea is

named in the Complaint simply "because of the particular position that [he] occup[ies] in the city government"—which is not sufficient to establish personal involvement.  Downtin v. O'Neil, 416 F. Supp. 3d 159, 162 (E.D.N.Y. 2017).  Accordingly, Plaintiff's Fourteenth Amendment Section 1983 claim against Commissioner Shea fails as a matter of law, and summary judgment is granted to Commissioner Shea as to this claim.

Federal Statutory Claims

        Plaintiff asserts additional claims under various federal statutes.  Plaintiff alleges that the City Defendants illegally towed his vehicle in violation of 5 U.S.C. section 2302 and 33 C.F.R. section 104.265.  Plaintiff alleges that the City Defendants failed to appear at a court hearing,[6] in violation of 18 U.S.C. section 3146 and 18 U.S.C. section 1505.  Plaintiff further alleges that the City Defendants made false reports to Plaintiff's insurance company about his vehicle, in violation of 41 U.S.C. section 4712; 25 CFR section 11.448; 18 U.S.C. section 241; 18 U.S.C. section 1961; 18 U.S.C. section 2384; 18 U.S.C. section 1512; and 18 U.S.C. section 1344.  Plaintiff cites these statutes in a summary fashion, and does not explain in his pleadings exactly how or why these statutes may have been violated.

        Many of the statutes cited by Plaintiff are criminal statutes—including 18 U.S.C. section 3146; 18 U.S.C. section 241; 18 U.S.C. section 1961; 18 U.S.C. section 2384; 18 U.S.C. section 1505; 18 U.S.C. section 1344; 18 U.S.C. section 1512; and 25 CFR section 11.448.

---

[6]  Plaintiff attached to his complaint a copy of a subpoena that he served on the "NYC Vehicles and Property Clerk" on April 8, 2018.  (Compl. at 22.)  This subpoena was prepared in connection with a case before the North Carolina Industrial Commission, in which Plaintiff is apparently suing the North Carolina Child Support Agency.  (Id.)  The subpoena directed the property clerk to appear in that action on May 7, 2018.  (Id.)  Plaintiff states that the property clerk did not appear.

Neither Plaintiff nor the Court possesses the authority to initiate the criminal prosecution of another individual or entity, because "the decision to prosecute is solely within the discretion of the prosecutor." Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981).  Accordingly, because Plaintiff "lacks standing to cause the criminal prosecution of others," any claims brought under criminal statutes must fail as a matter of law.  El Dey v. Bd. of Correction, No. 22-CV-2600-LTS, 2022 WL 2237471, at *3 (S.D.N.Y. June 22, 2022).

       Two of the statutes cited by Plaintiff are statutes that apply to persons employed by federal agencies or federal contractors—41 U.S.C. section 4712, and 5 U.S.C. section 2302.  See Fuerst v. Hous. Auth. of City of Atlanta, 38 F.4th 860, 869 (11th Cir. 2022)  (noting that 41 U.S.C. section 4712 is a federal whistleblower statute which "prohibits certain entities receiving federal funds from retaliating against their employees for reporting evidence of misconduct"); Doe v. F.D.I.C., 545 F. App'x 6, 7 (2d Cir. 2013) (noting that 5 U.S.C. section 2302 is a statute providing "a comprehensive system for reviewing personnel actions taken against federal employees") (citation omitted).  Plaintiff's claims under these statutes fail as a matter of law because Plaintiff has made no allegation that he was employed by any federal entity during the relevant time period of March 2018 or thereafter, nor any allegation that the facts of the case have anything to do with such employment.[7]  Another provision cited by Plaintiff—33 C.F.R. section 104.265—is a federal regulation setting out "security measures" that apply to operators of "maritime vessels," which clearly has no application in this case.  See Cassidy v. Chertoff, 471 F.3d 67, 71-72 (2d Cir. 2006).  Accordingly, Defendants are granted summary judgment dismissing each of the federal claims.

---

[7]     The Court notes, that although Plaintiff references his veteran status in his pleadings, he testified that his military service occurred from 2002 through 2008.  (Pl. Depo. Tr. at 22.)

State Law Tort Claims

Plaintiff next raises a variety of state law tort claims against the City Defendants, asserting that the City Defendants committed slander, libel, and intentional infliction of emotional distress by unlawfully towing his car and causing damage to his credit score. The City Defendants assert that these state law claims must fail as a matter of law because Plaintiff did not file a timely notice of claim.

"[New York] General Municipal Law §§ 50-e and 50-i specifically require that a plaintiff asserting state tort law claims against a municipal entity or its employees acting in the scope of employment: (1) file a Notice of Claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues." Cotto v. City of New York, No. 15-CV-9123-RWS, 2017 WL 3476045, at *8 (S.D.N.Y. Aug. 11, 2017) (citing N.Y. Gen. Mun. Law §§ 50-e and 50-i), aff'd, No. 17-2845, 2020 WL 1228765 (2d Cir. Mar. 13, 2020). New York State's notice-of-claim statutes apply to state law claims brought in federal court, and the notice of claim requirement is "strictly construed." Schoolcraft v. City of New York, 81 F. Supp. 3d 295, 300 (S.D.N.Y. 2015).

Here, the towing incident occurred on March 5, 2018, but Plaintiff did not file his notice of claim until June 9, 2020—nearly two years after the fact, and far outside the statutory ninety-day period. Indeed, the City sent Plaintiff a letter on June 18, 2020, informing him that his notice of claim had been disallowed as untimely because it "was not filed within 90 days from the date of occurrence." (Docket entry no. 71-4.) In one of his recent filings, Plaintiff proffered that he was not able to file a timely notice of claim because "New York was shut down" from March 16, 2020, until June 8, 2020. (Docket entry no 77, at 2.) Any shutdown of the City occurring this time frame is irrelevant, however, because the towing of Plaintiff's vehicle occurred on March 5, 2018, well before any 2020 shutdown. Moreover, "[f]ederal courts

do not have jurisdiction to hear state law claims brought by plaintiffs who have failed to comply with the notice of claim requirement, nor can a federal court grant a plaintiff permission to file a late notice of claim." Dingle v. City of New York, 728 F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010). Because Plaintiff's failure to file a timely notice of claim renders this Court without jurisdiction to hear his state law tort claims, summary judgment is awarded to the City Defendants as to these claims.

Claims Against the Dealership

The Court next addresses Plaintiff's claims against the Dealership, which include state law tort claims, federal statutory claims, and a constitutional claim. Upon the completion of discovery in October 2021, the Court issued an order warning Plaintiff that his claims against the Dealership were at risk of being dismissed for failure to prosecute. The order reads in pertinent part as follows:

> Plaintiff has taken no action to prosecute this case against [the Dealership]. Plaintiff alleged in his Complaint that '[the Dealership] somehow recovered his towed vehicle and sold it to someone else, and that [the Dealership] has made a false report on him,' which he challenged with three credit bureaus without success. However, Plaintiff has not provided any other information about [the Dealership], or requested information about [the Dealership] during the seven-month discovery. Nor has Plaintiff sought default judgment[8] against [the Dealership] . . . It is further ordered that in his [summary judgment] opposition brief, Plaintiff shall also explain to this Court why his claims, if any, against [the Dealership] should not be dismissed at this point.

(Docket entry no. 75) (citations omitted).

---

[8] The Dealership was served on August 6, 2020 (docket entry no. 19), but since that time the Dealership has not filed any notice of appearance and has not responded in any way to the Complaint.

Plaintiff did not comply with this order. In his filings made after the order was issued (docket entry nos. 76, 77, 78, 80, 81, 83, 84, 87, and 88), Plaintiff mentioned and reiterated his claims against the Dealership, but provided no further factual information about the Dealership, made no discovery for information from or about the Dealership, and made no submission that could be reasonably construed as a request for default judgment against the Dealership (which was served but has not responded to the complaint). Plaintiff has thus failed to prosecute his claims against the Dealership.

Every litigant—whether pro se or represented—has an obligation to prosecute his claims diligently. See Valentine v. Museum of Modern Art, 29 F.3d 47, 50 (2d Cir. 1994). When a plaintiff fails to prosecute his case adequately, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." Id. Under Rule 41(b) of the Federal Rules of Civil Procedure, "it has long been recognized that a district court has the inherent authority to dismiss for failure to prosecute sua sponte," and that such authority is "vital to the efficient administration of judicial affairs." Smith v. Westchester Cnty., No. 19-CV-1283-KMK, 2020 WL 883332, at *1 (S.D.N.Y. Feb. 24, 2020) (citations omitted). In determining whether to dismiss claims for failure to prosecute, a district court should consider the following factors:

> (1) the duration of plaintiff's failures or non-compliance; (2) whether plaintiff had notice that such conduct would result in dismissal; (3) whether prejudice to the defendant is likely to result; (4) whether the court balanced its interest in managing its docket against plaintiff's interest in receiving an opportunity to be heard; and (5) whether the court adequately considered the efficacy of a sanction less draconian than dismissal.

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 63 (2d Cir. 2000) (citations omitted).

In making this determination, the court must weigh all five factors, but "none of the five factors is separately dispositive." LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001). Here, the first two factors—the duration of the non-compliance and whether Plaintiff received warning—weigh in favor of dismissal. Plaintiff has known since October 2021 (approximately ten months ago) that he needed to take further action to prosecute his claims against the Dealership, and received clear warning that his failure to do so could result in dismissal. (Docket entry no. 75.) The October 2021 order even provided Plaintiff with concrete examples of actions that he could take to pursue his claims—such as requesting information from the Dealership via discovery or seeking default judgment against the Dealership—but Plaintiff did not take any of these suggested actions. Instead, Plaintiff has continued to make filings that either repeat the same allegations made in the Complaint or attempt to raise entirely new causes of action. (See docket entry nos. 76, 77, 78, 80, 81, 83, 84, 87, and 88.) None of these filings contain arguments or information that would help to move this case forward as against the Dealership.

However, the remaining three factors in the test—the risk of prejudice to defendant, judicial efficiency, and the value of less extreme sanctions—weigh against dismissal. There is little risk of prejudice to the Dealership here, as the Dealership itself has taken no action in this case. See LeSane, 239 F.3d at 210 ("[T]here is no evidence in the record that plaintiff's delay . . . caused any particular, or specially burdensome, prejudice to defendants beyond the delay itself."). Any judicial inefficiency resulting from Plaintiff's inaction has likewise been minimal, as Plaintiff has simply failed to take action to pursue his claims against the Dealership. See id. ("There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court.") (citation omitted). Finally, lesser sanctions are more suitable to account for Plaintiff's pro se status.

Under circumstances such as these—when the plaintiff is pro se, and only some of the five factors weigh in favor of dismissal—courts have often concluded that "the lesser sanction of dismissal without prejudice (rather than with prejudice) is appropriate in order to strike the appropriate balance between the right to due process and the need to clear the docket and avoid prejudice to defendant[s]." Amoroso v. County of Suffolk, No. 08-Civ-826, 2010 WL 2985864, at *3 (E.D.N.Y. July 21, 2010). For example, in Waters v. Camacho, 288 F.R.D. 70, 71-72 (S.D.N.Y. 2013), the court dismissed without prejudice for failure to prosecute when three months had elapsed since the pro se plaintiff's deadline to pay a filing fee, and plaintiff had received notice that failure to pay could result in dismissal; but any prejudice to defendants or the court "ha[d] been minimal," and lesser sanctions were appropriate "because of the plaintiff's pro se status." See also Kim v. Nelson, No. 21-CV-6695-KMK, 2022 WL 992816, at *1-2 (S.D.N.Y. Mar. 31, 2022) (dismissing action without prejudice where the pro se plaintiff had been "warned that the Court may dismiss Plaintiff's case for failure to serve Defendant," but instead of complying with the Court's order and effectuating service, Plaintiff made repetitive filings which "reiterated the same allegations as the initial Complaint" and "omitted any reference" to the service issue).

Here, the Court concludes that dismissal without prejudice is the best course of action. Ten months have elapsed since Plaintiff was warned that his failure to prosecute his claims against the Dealership could result in dismissal, and Plaintiff has taken no action to move those claims forward. This dismissal shall be without prejudice, however, in light of the minimal prejudice to the Dealership and the Court, and because of Plaintiff's pro se status.

CONCLUSION

For the reasons explained above, the motion for summary judgment filed by defendants the City of New York and NYPD Commissioner Dermot Shea (docket entry no. 70) is granted in its entirety, and all of Plaintiff's claims against these two defendants are dismissed with prejudice. Plaintiff's claims against defendant Leith Chrysler Jeep are dismissed without prejudice for failure to prosecute. The Clerk of Court is respectfully directed to enter judgment accordingly and to close this case.

Pursuant to SDNY Local Civil Rule 7.2, the City Defendants are hereby ordered to mail Plaintiff a copy of the unpublished cases cited in this Memorandum Order, to the extent not already provided to Plaintiff by the City Defendants in connection with their summary judgment papers.

This Memorandum Order resolves docket entry nos. 70, 78, 80, 81, 83, 87, and 88. Chambers will mail a copy of this Memorandum Order to Plaintiff.

SO ORDERED.

Dated: August 12, 2022
New York, New York

                                                       /s/ Laura Taylor Swain
                                                      LAURA TAYLOR SWAIN
                                                      Chief United States District Judge

**Copy mailed to:**

Shomari Norman
5481 Youngridge Drive, Apt 2
Pittsburgh, PA 15236